**MIDLAND FORD TRACTOR COMPANY, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 16336.**

United States Court of Appeals Eighth Circuit.

April 29, 1960.

Rehearing Denied June 13, 1960.

**112**

Robert Ash, Washington, D. C., for petitioner.

Morton K. Rothschild, Attorney, Dept. of Justice, Washington, D. C., for respondent.

Before GARDNER, WOODROUGH, and BLACKMUN, Circuit Judges.

GARDNER, Circuit Judge.

Petitioner seeks review of a decision of the Tax Court redetermining deficiencies in its income taxes for the fiscal years 1951 and 1952. The court disallowed a part of the amount claimed by petitioner for rents paid during the period in controversy on the ground that it was not required to be made as a condition to the continued use or possession of the leased property, and the court disallowed a part of the amount claimed as compensation paid to its officers on the ground that the payments were excessive and hence the excess disallowed was not an ordinary and necessary expense of carrying on petitioner's trade or business. Section 23(a)( 1) (A), Internal Revenue Code of 1939, 26 U.S.C.A. § 23(a) (1) (A).

■ Petitioner was incorporated in June, 1947, with a capital stock of 250 shares issued in equal shares of 83⅓ each to John J. Graham, Louis H. Clay, Sr., and Tom W. Dutton. In August, 1948, Louis H. Clay, Sr., transferred 33 shares to his son, Louis H. Clay, Jr. Petitioner's business consisted of distributing Ford tractors, farm implements and equipment, industrial equipment, and parts and accessories to dealers in 46 counties in eastern Missouri and 61 counties in southern Illinois, pursuant to a written contract with Dearborn Motors Corporation. From the date of its incorporation through approximately September, 1949, petitioner temporarily operated its business at 1210 Vandeventer Avenue in St. Louis. This property was leased for approximately $1,000 per month. On November 29, 1948, petitioner acquired 6.148 acres of unimproved land on Lindbergh Boulevard in Robertson, Missouri, for $11,269.85. This area was developing into the leading industrial district of St. Louis County.

Delta Realty Company was incorporated on April 14, 1949 with a paid-up capital of $1,000. The stockholders and officers of that company at the time of incorporation and during the controversial years and the shares held by each were: Tom W. Dutton, president, 333⅓ shares; Flossie Graham (wife of John J. Graham), secretary-treasurer, 333⅓ shares; Louis H. Clay, Sr., vice-president, 166⅔ shares; Louis H. Clay, Jr., 166⅔ shares. Petitioner sold the property it had acquired in Robertson, Missouri, to the Delta Realty Company for $11,269.85, the exact amount of the purchase price paid by it. Within two weeks after Delta was incorporated it leased to petitioner the property which it had purchased from it by a written lease containing the following provisions:

"1. * * * to Have and to Hold the Same, * * * for * * * (a) term * * * commencing on * * * September (1), 1949, and ending on * * * August (31), 1954.

"2. Lessee shall pay * * * a fixed minimum yearly rental of * * $18,000.00, payable in equal install-

ments, in advance, of \* \* \* $1,-500.00 \* \* \*.

"3. Lessee shall also pay to Lessor an additional rental for said premises for each lease year in which one per cent \* \* \* of the net sales \* \* \* of Lessee exceeds the fixed minimum yearly rental, such additional rental to be equal to the amount by which one per cent \* \* of the net sales of Lessee exceeds such fixed minimum yearly rental. Such additional rent shall be payable as follows: On or before the 15th day of the following month, Lessee shall pay to Lessor the amount by which one-half \* \* \* of one per cent \* \* \* of the net sales during such preceding month exceeds \* \* \* $1,500.00. \* \* \*

" \* \* \* Lessee shall, on or before the fifteenth day of each month during the whole term of this lease and of the month following the expiration thereof, render to Lessor an accurate statement showing the net sales of Lessee for the preceding month \* \* \*.

"4. Lessee \* \* \* agrees \* \* (to) pay \* \* \* taxes, duties, assessments, \* \* \*.

"5. \* \* \* carry insurance \* \* \* (u)pon the improvements \* \* \* now or hereafter erected on the leased premises \* \* \*.

\* \* \* \* \* \*

"7. (Maintenance expenses.)

"8. Lessee, upon the signing of this lease, is to deposit with Lessor \* \* \* $25,000.00 as security \* \* \*.

\* \* \* \* \* \*

"12. Lessee shall have the option to \* \* \* (renew this lease for an additional 5 years.)"

At the time of the execution of this lease the property was unimproved, but Delta thereafter erected a building on the leased premises at an approximate cost of $120,000. It therefore had a total investment in the property of approximately $131,000. Petitioner occupied the leased property during fiscal years 1951 and 1952. Petitioner paid in accordance with the terms of its lease for the taxable years here under consideration the aggregate sum of $162,280.51 as rent, plus taxes of $3,014.32, insurance of $1,-680.42, and maintenance of $842.35 making a total of $167,817.60, and deducted that amount from its gross income in its tax returns for the fiscal years 1951 and 1952. It appears from the record that actual rentals paid under the lease for the fiscal years 1950 to 1952, inclusive, aggregated more than $225,000. Thus, Delta, the lessor, recovered almost double its original investment of about $131,000 in less than three years. Petitioner contends that the Tax Court erred in reducing the amount claimed by it as rental.

As has been observed, the stockholders of petitioner were also stockholders of the Delta Realty Company. Three of the four stockholders of petitioner, owning more than 50% of its stock, also owned 666⅔ out of the 1,000 shares issued by Delta and consequently controlled Delta. The rest of the stock of petitioner was owned by John J. Graham, while the remainder of the stock of Delta was owned by Graham's wife.

The statute involved, so far as here pertinent, reads as follows:

"§ 23. Deductions from gross income.

"In computing net income there shall be allowed as deductions:

"(a) Expenses.

"(1) Trade or business expenses.

"(A) In General. All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; \* \* \* and rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity."

■ In view of the fact that petitioner's stockholders owned more than a majority of the stock of the Delta Realty Company, petitioner, in contracting with it, in effect was contracting with itself under the name of Delta Realty Company. Under the facts of this case the parties could not be said to be dealing at arm's length and no presumption of the deductibility of the entire amount paid as rentals under the lease attaches. In Brown Printing Co. v. Commissioner, 5 Cir., 255 F.2d 436, 438, it is said:

"It is entirely appropriate, therefore, for the Commissioner to inquire into payments in the nature of rent and disallow such part as may be excessive in amount, and if such determination of disallowance is soundly based, his action carries with it a presumption of correctness. Furthermore, while the actual contract made between parties dealing fully at arm's length is usually persuasive of its reasonableness, no such inference can arise from the execution of a contract between persons having an interest on both sides of a transaction."

■ It was the function of the Tax Court to determine as a fact what was a reasonable rental to be paid by petitioner. This the Tax Court has done and its finding is presumptively correct and should not be set aside unless clearly erroneous. It is argued that the Tax Court failed to consider certain facts bearing on the question of the reasonableness of the rent paid. The Tax Court received and considered all the evidence offered by petitioner. We have carefully examined the decision of the Tax Court which includes its findings. In the course of its decision it is said:

"As to the rental issue, under all the circumstances, including the type and term of the lease, we have found that a rental figure for the property reasonably required for its continued use by petitioner during the years in controversy was not in excess of $37,500 a year. In arriving at this figure we have taken into consideration what we have determined to be a reasonable rental if the amount were definitely fixed in advance for a customarily long term, and also what percentage of net sales would be adequate to induce an unrelated landlord to enter into a comparable agreement at the time of the original lease. See Brown Printing Co. v. Commissioner (C.A.5), 255 F.2d 436, reversing T.C.Memo. 1957–37. The amount properly deductible as rent incorporated in our findings is consistent with our conclusions in these respects. A minimum amount of $18,000 was payable in any event, even in a bad year. The difference represents the most we think petitioner's landlord could reasonably expect in a good year for his risk on account of the percentage clause and the possibility of nonrenewal."

■ There was expert evidence produced by the Commissioner fully sustaining the court's finding and it was the province of the trial court to resolve all conflicts in the evidence and we may assume the conflicts were resolved in favor of the Commissioner. A review of the testimony would unduly extend this opinion and serve no useful purpose. Suffice it to say that there was conflict in the evidence and the evidence on behalf of the Commissioner, if believed by the court, was substantial and abundantly sustained the court's findings.

Petitioner has cited and relies upon West Virginia Tractor & Equipment Co., 54,016 P.H.Memo. T.C., and Southern Ford Tractor Corporation v. Commissioner, 29 T.C. 833. The cases are readily distinguishable from the instant case. In Southern Ford Tractor Corporation v. Commissioner, supra, the taxpayer sustained the burden of proof of the reasonableness of the rental. In that case there was testimony that the rental agreed upon was determined after a very thorough investigation on the part of the taxpayer as to rentals paid under similar circumstances and past sales of the taxpayer were studied to determine the percentage of sales to be used as

rentals. In West Virginia Tractor & Equipment Co., supra, the court held:

"*  *  * that the lease agreement of September 11, 1940, was entered into in an arms-length transaction, and that the payments made by the petitioner in 1947, 1948, and 1949, pursuant to the terms of the lease, were in fact required to be made as a condition to the continued use and possession of the property."

The redetermination of the amount deductible from petitioner's gross income for rent paid must be sustained.

■ Petitioner contends that the Tax Court erred in disregarding the uncontradicted and unimpeached testimony of petitioner's witnesses as to the value of personal services rendered to petitioner by its officers and in holding that part of the compensation paid was excessive and unreasonable. On November 27, 1950, the directors of petitioner, who were also its stockholders and officers, fixed their salaries as officers as follows: The monthly salary of Graham at $2,500, and the monthly salaries of Clay and Dutton at $1,500 each, and in addition to these salaries, Graham was to receive 12½% of the net profits in excess of $100,000 and Clay and Dutton were each to receive 10% of the net profits in excess of $100,000. Pursuant to this authorization there was paid to the three officers named the aggregate sum of $203,563 as compensation for the fiscal year 1951 and the aggregate sum of $189,784 as compensation for the fiscal year 1952, and these amounts were, in petitioner's tax returns for the years here involved, deducted from the gross income of petitioner. Graham, as president and general manager, devoted his entire time to the business of petitioner but Clay and Dutton devoted only part time to that service and were employed by certain other companies and each received annually from these other employments over $50,000. Graham, Clay, and Dutton were witnesses for petitioner and testified as to the character and extent of their services and, as experts, testified that the compensation received by each

was, in their opinion, reasonable. There was testimony of persons related to them in a business way and friendly to them, tending to corroborate the testimony of petitioner's officers. On behalf of the Commissioner there was evidence that the Berry Tractor and Equipment Company, for the fiscal years ended September 30, 1951, and September 30, 1952, paid officers of the company, whose services were comparable to those of petitioner's officers, as follows: President, $18,000, Vice-President, $18,000, Secretary-Treasurer, $5,400. It appears from the record that while volume of petitioner's net sales increased about 15% from the fiscal year 1950 to the fiscal year 1951, the total compensation of officers was increased from $55,500 to $203,563 in the same period. Dividends, on the other hand, decreased from $125,000 in 1950 to $50,000 in 1951, and manifestly the distribution of the earnings of the company had the effect of very substantially reducing the excess profit taxes collectible against petitioner. In view of all of these proven or admitted facts and circumstances, it cannot reasonably be contended that the evidence produced by the petitioner was "uncontradicted and unimpeached."

The question before the Tax Court was a question of fact to be determined by all the facts and circumstances in evidence. The Tax Court was not bound to believe the testimony of any witness even though not directly contradicted. It was the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony. Builders Steel Co. v. Commissioner, 8 Cir., 197 F.2d 263; Skelly Oil Co v. Holloway, 8 Cir., 171 F.2d 670; Aetna Life Ins. Co. v. Kepler, 8 Cir., 116 F.2d 1; Nee v. Linwood Securities Co., 8 Cir., 174 F.2d 434; Anchor Co. v. Commissioner, 4 Cir., 42 F.2d 99. We conclude that there was substantial evidence sustaining the finding of the Tax Court on this question of reasonableness of compensation paid petitioner's officers, and hence its decision cannot be said to be clearly erroneous. Its decision is therefore affirmed.