434 F.2d 373
 TRANSPORT MANUFACTURING & EQUIPMENT COMPANY, a Delaware Corporation, Transferee, Appellant,
v.
COMMISSIONER OF INTERNAL REVENUE, Appellee.
TRANSPORT MANUFACTURING & EQUIPMENT COMPANY, an Illinois Corporation, Appellant,
v.
COMMISSIONER OF INTERNAL REVENUE, Appellee.
 No. 19695.
 No. 19696.
 United States Court of Appeals, Eighth Circuit.
 October 1, 1970.
 As Amended On Rehearing November 5, 1970.
 
 COPYRIGHT MATERIAL OMITTED Guy A. Magruder, Jr., Kansas City, Mo., for appellants, and filed brief and reply brief.
 Daniel B. Rosenbaum, Atty., Dept. of Justice, Washington, D. C., for appellee, and filed brief; Johnnie M. Walters, Asst. Atty. Gen., and Meyer Rothwacks and Michael B. Arkin, Attys., were on the brief.
 Before BLACKMUN,* MEHAFFY and LAY, Circuit Judges.
 LAY, Circuit Judge.
 
 
 1
 Two appeals have been lodged by taxpayers from adverse decisions of the Tax Court. They have been consolidated for review in this court. The petitioner contests in No. 19,696 the Tax Court's decision (T.C. Memo 1964-190) upholding the Commissioner's disallowance of certain deductions for unreasonable compensation, non-business expenses and capital expenditures. In No. 19,695 the taxpayer contests the Tax Court's decision (T.C. Memo 1968-189) adjudicating interest on the interest assessed under a jeopardy assessment pursuant to § 273 of the 1939 Internal Revenue Code.[1] We affirm the findings of deficiencies by the Tax Court in No. 19,696. We reverse the determination as to the interest question in No. 19,695 because of lack of jurisdiction of the Tax Court to pass upon this issue.
 
 
 2
 Two corporations are generally involved here: Riss & Company and Transport Manufacturing & Equipment Company (hereinafter TM&E).[2] During the years in question, 1949-1953, Riss & Co. was a common carrier engaged in interstate and intrastate motor freight transportation. TM&E's principal business was the owning and leasing of tractors, trailers and terminal facilities to Riss & Co. TM&E was organized chiefly as a business convenience to Riss & Co. Richard R. Riss, Sr., the founder of Riss & Co., was chairman of the board and the chief executive officer of both Riss & Co. and TM&E. He owned all of the voting stock of Riss & Co. He and his family were essentially equal shareholders of TM&E. Robert Riss, son of Riss, Sr., became president of Riss & Co. in 1950. Richard R. Riss, Jr., another son, became president of TM&E in 1951. The two companies had their offices at the same location, and, for the most part, utilized the same office force and facilities. TM&E had usually three or four employees who were office workers and secretaries. The supervisors and terminal managers were on the Riss & Co. payroll.
 
 
 No. 19,696: Deficiencies
 
 
 3
 (1) Unreasonable compensation.
 
 
 4
 The Commissioner urges the disallowance of the excess salaries paid to Richard R. Riss, Jr., in the years 1951 to 1953 on the ground that the payments constituted unreasonable compensation. The Commissioner had previously determined $12,000 to be the reasonable amount. The Tax Court found that any salary to Richard over $15,000 was excessive. Richard's salaries for the years in question were as follows: 1951, $24,688.26; 1952, $31,807.81; 1953, $46,286.36.
 
 
 5
 We affirm the Tax Court's disallowance of the deductions to the extent they exceed $15,000 per year. The evidence showed that Richard, at age 26, succeeded his father as president of TM&E in 1951 and held that position until his resignation in April, 1955, at which time his father again assumed the presidency. His only previous executive experience had been as the vice-president of TM&E during 1950. Richard testified that he had worked for the company since age 14, that he put in long hours and was concerned with all phases of the company's business. Notwithstanding these facts, the Tax Court had before it evidence that Riss, Sr. had authority to, and on occasion did, sign his son's name as president to various TM&E contracts. It was further testified that Riss, Sr. retained control over the company's policy and over the final decisions concerning the company. Riss, Jr. testified that the filial relationship could have been instrumental in his appointment.
 
 
 6
 Richard's compensation as president of TM&E was determined on the basis of a percentage of Riss & Co.'s gross revenue. The taxpayer contends that the Tax Court found this fact to render the compensation per se unreasonable. While it appears that the Tax Court placed strong emphasis on this evidence, there is no indication, nor can it be inferred from its opinion, that the Tax Court found this to be the sole reason for holding Richard's salary excessive. This was merely a factor to be considered. The percentage method is an accepted and recognized means of fixing compensation in business in which employee activity can stimulate net earnings. See 9 Mertens, Law of Federal Income Taxation § 25.75 (1965 Rev. ed.). It should be noted, however, that Riss, Jr. was the only TM&E officer whose compensation was determined on a percentage basis of Riss & Co.'s income. There was testimony by both Richard and his father that it was his father's desire that both his sons receive the same salary since their responsibilities were as great and because he "didn't want to cause any animosity between the two boys of one having a few dollars more salary than the other, so [he] made them exactly the same."
 
 
 7
 It is argued that the Commissioner produced no evidence of his own to demonstrate that the amount paid Richard as president of TM&E was unreasonable compared to similarly situated executives of other companies. However, this contention overlooks the essential issue. In dispute is not the salary of simply the president of a corporation, but rather, the salary paid to Richard as president. The Tax Court properly considered Richard's prior salaries in comparison, his lack of qualifications and executive experience, his virtually non-existent authority, and the basis of his compensation computation. Standard Asbestos Mfg. & Insulating Co. v. Commissioner, 276 F.2d 289 (8 Cir. 1960); Heil Beauty Supplies v. Commissioner, 199 F.2d 193 (8 Cir. 1952); Helvering v. Superior Wines & Liquors, 134 F.2d 373 (8 Cir. 1943); Julia Dahl et al., Executors, 24 B.T.A. 1167 (1931); Meyer Hecht, 2 B.T.A. 319 (1925). Cf. Robert Louis Stevenson Apartments, Inc. v. Commissioner of Internal Revenue, 337 F.2d 681 (8 Cir. 1964); Baltimore Dairy Lunch, Inc. v. United States, 231 F.2d 870 (8 Cir. 1956); Oscar Mitchell, 27 B.T.A. 101 (1932). We are satisfied there is nothing in the record which demonstrates the Tax Court's finding to be clearly erroneous. United States v. United States Gypsum Co., 333 U.S. 364, 394-395, 68 S.Ct. 525, 92 L.Ed. 746 (1948). See also Jackson v. Hartford Acc. & Indem. Co., 422 F.2d 1272, 1275 (8 Cir. 1970) (concurring opinion).
 
 
 8
 (2) Deductibility of "business expenses" on residential properties.
 
 
 9
 During the years involved, TM&E owned three residential properties in the Kansas City area. All were rented to members of the Riss family and the taxpayer deducted the repair and maintenance costs exceeding rents as ordinary and necessary business expenses. The Tax Court held all of these to be improper corporate deductions. The taxpayer appeals only the disallowance relating to the maintenance and repair of the property located at 6505 State Line, Kansas City, Missouri. This property consists of a twenty-room residence situated on four and one-half acres of land. It was purchased by TM&E in 1949 for a little over $97,000 and was soon thereafter placed on the market, via a confidential listing, with a sale price of $125,000. It is contended that the residence was purchased as a business investment for the corporation.
 
 
 10
 Although conceding that payment of utilities and salaries of household employees were of substantial benefit to the occupants, the taxpayer contends that insurance, depreciation and identifiable maintenance costs should be deductible under § 23 of the 1939 Internal Revenue Code. Section 23(a) (1) (A) authorizes deductions for "[a]ll the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *" Section 23(l) authorizes deductions for the depreciation "(1) of property used in the trade or business, or (2) of property held for the production of income." The Tax Court found the evidence affirmatively established that the property had no business use in conjunction with TM&E's leasing rolling stock and terminals to Riss & Co. We agree.
 
 
 11
 During the tax years in question the residence was used for the periodic occupancy of Riss, Sr.'s former wife (divorced in 1949) and their daughter and son Richard, Jr. Taxpayer contends the use as a family residency was at the recommendation of the real estate agent who advised the company that an occupied house would sell better. While the property was purportedly listed confidentially with several realtors, there was other evidence produced by the Commissioner which disputed TM&E's good faith attempt to sell. The home was shown only about eight or ten times in ten years. The rental proceeds amounted to a mere one-fourth of the deductions sought. TM&E purchased no similar "investments" which were not occupied by members of the Riss family. A combination of all of these factors fully justified the Tax Court in finding that the primary motive in owning the property was not for business or investment purposes but rather for the personal benefit of the Riss family. See e. g., Mel Dar Corp. v. Commissioner of Internal Revenue, 309 F.2d 525 (9 Cir. 1962) cert. denied, 372 U.S. 941, 83 S.Ct. 933, 9 L.Ed.2d 967 (1963); International Trading Co. v. Commissioner of Internal Revenue, 275 F.2d 578 (7 Cir. 1960).
 
 
 12
 The taxpayer additionally asserts that the only direct evidence on the investment motive was from the Riss family and that the conclusion reached by the Tax Court was not permissible under the undisputed evidence. As the government points up, the trial court is not conclusively bound by the taxpayer's stated intention. Helvering v. National Grocery Co., 304 U.S. 282, 295, 58 S.Ct. 932, 82 L.Ed. 1346 (1938). See also Investors Diversified Services, Inc. v. Commissioner of Internal Revenue, 325 F.2d 341, 350-352 (8 Cir. 1963); Midland Ford Tractor Co. v. Commissioner of Internal Revenue, 277 F.2d 111, 115 (8 Cir. 1960), cert. denied, 364 U.S. 881, 81 S.Ct. 169, 5 L.Ed.2d 102; Seletos v. Commissioner of Internal Revenue, 254 F.2d 794, 797 (8 Cir. 1958); Cullers v. Commissioner of Internal Revenue, 237 F.2d 611, 615-617 (8 Cir. 1956); Heil Beauty Supplies v. Commissioner of Internal Revenue, 199 F.2d 193, 195 (8 Cir. 1952).
 
 
 13
 (3) Capitalization of the parking lots.
 
 
 14
 This deficiency finding concerns expenditures made by TM&E to repave its terminal yards at Jersey City and Cleveland as part of the general plan to remedy certain structural defects at these newly-constructed facilities.[3] The taxpayer deducted the cost as ordinary and necessary business expenses under § 23(a) (1) (A). The Commissioner contended, and the Tax Court agreed, that these were capital expenditures which must be depreciated over the useful life of the facilities.
 
 
 15
 Both terminals had been built upon unstable ground and required extensive replacement and rebuilding within one year of their completion. The evidence is undisputed that the resultant deterioration was not the effect of normal wear and tear but rather the consequence of faulty construction. It has been observed that, "Where the line should be drawn between capital and current expenses often presents a practicable question of considerable difficulty and the decision of the Tax Court in such a case should not be disturbed unless manifestly wrong." P. Dougherty Co. v. Commissioner of Internal Revenue, 159 F.2d 269, 272 (4 Cir. 1946), cert. denied 331 U.S. 838, 67 S.Ct. 1515, 91 L.Ed. 1850 (1947). Upon a review of the record, we affirm the Tax Court decision that these expenditures constituted a part of the original construction and as such must be capitalized. See e. g., Stewart Supply Co. v. Commissioner of Internal Revenue, 324 F.2d 233 (2 Cir. 1963); Stoeltzing v. Commissioner of Internal Revenue, 266 F.2d 374 (3 Cir. 1959); Jones v. Commissioner of Internal Revenue, 242 F.2d 616 (5 Cir. 1957); Driscoll v. Commissioner of Internal Revenue, 147 F.2d 493 (5 Cir. 1945); Wadsworth Mfg. Co. v. Commissioner of Internal Revenue, 44 F.2d 762 (6 Cir. 1930). See also Griffin & Co. v. Commissioner of Internal Revenue, 389 F.2d 802, 182 Ct.Cl. 436 (1968).
 
 
 No. 19,695: Post-Assessment Interest
 
 
 16
 This appeal stems from a jeopardy assessment made September 14, 1960, against TM&E (Delaware) as the transferee of TM&E (see note 2, supra). The amount assessed was $3,301,998.11 of which $1,986,163.82 was subsequently abated. The taxpayer previously sought relief from this court to compel the Commissioner to abate the assessment upon TM&E's proffered payment of the remaining amount due. The tendered payment, as well as the jeopardy assessment, did not include any compound interest.[4] We affirmed, due to lack of jurisdiction, the district court's dismissal. Transport Mfg. & Equip. Co. v. Trainor, 382 F.2d 793 (8 Cir. 1967).
 
 
 17
 The jeopardy assessment included simple interest on the deficiencies only. The taxpayer contested the post-assessment interest allegedly due under § 297[5] on this interest. The Tax Court determined that the taxpayer was liable for the post-assessment interest from September 30, 1960, on the unabated portion of the jeopardy assessment. T.C. Memo 1968-189. TM&E (Delaware) asserts five basic defenses to the interest determination: (1) the jeopardy assessment rendered was not an assessment of transferee liability; (2) a stipulation delineated the liability of TM&E (Delaware) and this did not include post-assessment interest; (3) the 1954 Code was applicable;[6] (4) state law determined the amount of a transferee's liability; and (5) the Tax Court lacked jurisdiction to determine post-assessment interest.
 
 
 18
 We find the Tax Court lacked jurisdiction to determine the post-assessment interest. We need not pass on the other issues raised in view of this holding on the jurisdictional question.
 
 
 19
 The Tax Court assumed jurisdiction of the interest issue, citing Riss & Co., 45 T.C. 230 (1965), and relying upon § 273 (c) of the Internal Revenue Code of 1939 which specifically authorizes the Tax Court to "redetermine the entire amount of the deficiency and of all amounts assessed at the same time in connection therewith." Riss & Co. is, however, distinguishable in that its discussion relates to only simple interest assessed at the same time as the deficiency. More significant is the statutory language of § 273(c) which relates only to "amounts assessed at the same time" as the deficiency. In the instant case only simple interest due on the deficiency itself was set forth in the jeopardy assessment. By the very language of § 297, post-assessment interest does not begin to run until after the assessment itself is made. Interest under § 297 clearly could not have been "assessed at the same time" as the 1960 jeopardy assessment.
 
 
 20
 In Ginsburg v. United States, 278 F.2d 470 (1 Cir. 1960), upon petition for rehearing the Court of Appeals for the First Circuit observed that the limitation on the Tax Court's jurisdiction in regard to normal deficiencies is not applicable to jeopardy assessments because of the express language under § 273(c). The court points out § 273(a) provides for the assessment of the deficiency "together with all interest." Additionally the court mentions § 273(f) which provides for staying the collection "of the amount of the assessment" by the filing of the bond which is "conditioned upon the payment of so much of the amount, the collection of which is stayed by the bond, as is not abated by the decision of the Tax Court which has become final, together with interest thereon as provided in section 297." 278 F.2d at 473.
 
 
 21
 The issue in Ginsburg did not involve the jurisdiction of the Tax Court. The court's discussion was precipitated by the taxpayers' contention that the amount "assessed" in a jeopardy assessment relates only to the basic deficiency. This discussion arose by the taxpayers' claim that they were being penalized by having to pay "interest upon interest" under § 294(b) since they did not post a bond under § 273. They argued that if they posted a bond, § 294(c) made § 294(b) inapplicable and that therefore the collection of delinquency interest constituted discrimination based upon their failure to file a bond. The court discounted their argument pointing out that even when a bond is posted interest upon interest follows under procedures in § 297. See generally 10 Mertens, Law of Federal Income Taxation § 55.07 (1965 Rev. ed.).
 
 
 22
 The facts of Ginsburg are additionally significant to an overall understanding of the jurisdictional issue before us. The suit was commenced by the taxpayers in the federal district court[7] to recover interest paid in connection with jeopardy assessments under the Internal Revenue Code of 1939. After mailing notices of the deficiencies, the Commissioner made a jeopardy assessment, which included only the interest to date on the deficiencies claimed.[8] The taxpayer sought a redetermination of the entire deficiency in the Tax Court, but did not file a bond under § 273(f). The Commissioner did not enforce collection. Later a compromise was made and a decision was entered by the Tax Court. It was at that time, following the Tax Court's decision, that the Commissioner imposed post-assessment interest on that portion of the jeopardy assessment which had been sustained under the compromise. Part of the taxpayers' payments constituted interest upon interest and an action for recovery was brought in the federal district court.
 
 
 23
 In the instant case the Commissioner seeks to impose interest on interest in the Rule 50 computation relating to the redetermination of the deficiencies assessed. The Commissioner assumes that the Tax Court has jurisdiction to pass upon the validity of the interest under § 297 even though the issues are distinctive from the deficiency redetermination itself. For the reasons stated, we find Ginsburg inapplicable to the question presented here. As we have previously discussed, § 273(c) gives jurisdiction to the Tax Court to redetermine the amount of the deficiency and "of all amounts assessed at the same time in connection therewith." This provision contemplates a specified "amount" actually assessed. The assessment is not open-ended and does not in any way reflect assessment for post-assessment interest that has yet to accrue. The interest actually assessed at the time of the deficiency relates only to simple interest due on the alleged deficiency at that time. It is not until the Tax Court has made a final judgment that the statutory scheme under both § 273(i) and § 294(b) contemplates the imposition of post-assessment interest.
 
 
 24
 When a jeopardy assessment is collected under § 273(i),[9] § 297 of the 1939 Internal Revenue Code provides for the collection of interest on the amount assessed from the date of the jeopardy assessment to the date of notice and demand given pursuant to § 273(i). In the event the tax is not paid within 10 days from the date of notice and demand, interest at 6 percent per annum is assessed until the tax is paid. Section 273(i) makes clear that any notice and demand given thereunder requires in the first instance a final determination of the decision of the Tax Court. In the instant case the Tax Court proceedings focused only on the issues as to the deficiencies and interest actually assessed. Post-jeopardy assessment interest was not included in the jeopardy assessment. The legislative history of § 273 demonstrates that a jeopardy assessment is merely another method of collecting an ordinary deficiency. 1954 U.S.Code Cong. & Adm.News, pp. 4565, 5239. Section 273(c) does not expand the jurisdiction of the Tax Court other than by its specific language relating to "amounts assessed at the same time" with the deficiency.
 
 
 25
 The Commissioner likewise urges jurisdiction of the Tax Court under § 311(a) (1) of the Internal Revenue Code of 1939, which reads:
 
 
 26
 "(a) Method of collection. The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this chapter (including the provisions in case of delinquency in payment after notice and demand, the provisions authorizing disstraint and proceedings in court for collection, and the provisions prohibiting claims and suit for refunds):
 
 
 27
 "(1) Transferees. The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this chapter."
 
 
 28
 The Tax Court similarly supports this position by reliance on Louisiana & Arkansas Ry., 28 B.T.A. 153 (1933), aff'd 63 App.D.C. 120, 70 F.2d 286 (1934). The Board of Tax Appeals there reasoned:
 
 
 29
 "When, therefore, it becomes necessary to consider the scope of the system of jurisprudence as to transferee liability, set up for the first time in the Revenue Act of 1926, section 280 et seq., Phillips v. Commissioner [of Internal Revenue] 283 U.S. 589 [51 S.Ct. 608, 75 L.Ed. 1289], there is no justification for confining such system within an assumed general purpose to keep interest out of the Board's focus. Unhampered by such a restriction, it is clear that as to a transferee the Commissioner may determine a liability not only for a deficiency but also for `interest, additional amounts, and additions to the tax provided by law,' and that such a determination is subject to the same process as the determination of a deficiency, that is, a proceeding in the Board for redetermination. Section 280(a), Revenue Act of 1926, appears in the margin. The Board has, in several earlier decisions in transferee proceedings, included interest in its determination, Henry Cappellini, 16 B.T.A. 802; Wayne Body Corp., 24 B.T.A. 524; Louis Costanzo, 16 B.T.A. 1294; J. E. Duval, 21 B.T.A. 1357. A fresh consideration of the question confirms the propriety of those decisions." 28 B.T.A. at 155-156.
 
 
 30
 Section 280 of the Revenue Act of 1926 is identical to § 311 of the Internal Revenue Code of 1939. The difficulty in construing § 311(a) (1) as a jurisdictional basis for the Tax Court to pass upon post-assessment interest is that § 311(a) (1), as its forerunner § 280 of the Revenue Act of 1926, merely empowers the Commissioner to collect from the transferee the tax as well as "interest, additional amounts, and additions to the tax provided by law." Section 311 was not designed to expand the jurisdiction of the Tax Court as defined in 26 U.S.C.A. (I.R. C.1954) § 7442. Section 311 is a procedural statute only and merely gives authority to the Commissioner to act in a transferee case as he would in any other case involving non-transferee taxpayers. Commissioner of Internal Revenue v. Stern, 357 U.S. 39, 42, 78 S.Ct. 1047, 2 L.Ed.2d 1126 (1958); Phillips v. Commissioner of Internal Revenue, 283 U.S. 589, 594 n. 4, 51 S.Ct. 608, 75 L.Ed. 1289 (1931); Burnet v. San Joaquin Fruit & Investment Co., 52 F.2d 123, 128 (9 Cir. 1931). The Tax Court is still one of limited jurisdiction, fixed solely by statutory limitations. Commissioner of Internal Revenue v. Gooch Milling & Elev. Co., 320 U.S. 418, 64 S.Ct. 184, 88 L.Ed. 139 (1943); Page v. Commissioner of Internal Revenue, 297 F.2d 733 (8 Cir. 1962); Jefferson Loan Co. v. Commissioner of Internal Revenue, 249 F.2d 364 (8 Cir. 1957).
 
 
 31
 It was early adjudicated that the Tax Court does not have jurisdiction over interest in a normal deficiency determination.[10] The reasoning is that (1) at the time of the deficiency determination the interest has not been assessed, Schuster v. Commissioner of Internal Revenue, 312 F.2d 311 (9 Cir. 1962);[11] Commissioner of Internal Revenue, v. Kilpatrick's Estate, 140 F.2d 887 (6 Cir. 1944), and (2) ordinary interest is not within the issues before the Tax Court since such interest can only be determined after a final judgment in the deficiency proceeding, United States v. Globe Indem. Co., 94 F.2d 576 (2 Cir. 1938), cert. denied, 304 U.S. 575, 58 S.Ct. 1047, 82 L.Ed. 1538;[12] Standard Portland Cement Co. v. Commissioner of Internal Revenue, 80 F.2d 585 (3 Cir. 1935). We think it clear that § 297 and § 273(i) similarly contemplate a final redetermination by the Tax Court of the deficiencies and interest assessed before the collection of post-assessment interest can be enforced.
 
 
 32
 The present situation is somewhat analogous to Superheater Co. v. Commissioner of Internal Revenue, 125 F.2d 514 (2 Cir. 1942), involving excess profits taxes, where the taxpayer, as the government here, sought to have all issues litigated at once to avoid a multiplicity of suits. The court agreed with the policy principles but pointed out:
 
 
 33
 "[I]t seems clear that until the jurisdiction of the Board is further enlarged whatever procedural convenience might be attained by having a formal redetermination of the excess profits taxes in this particular instance must give way to the greater necessity for recognizing and giving effect to the limited statutory jurisdiction of the Board." 125 F.2d at 516.
 
 
 34
 Under these circumstances we find the Tax Court without jurisdiction in the present proceedings to determine post-assessment interest under § 297 of the Code.
 
 
 35
 Judgment affirmed in No. 19,696; judgment vacated in No. 19,695 for lack of jurisdiction and this matter is remanded to the Tax Court for recomputation of taxpayer's liability without consideration of post-assessment interest.
 
 
 
 Notes:
 
 
 *
 Mr. Justice Blackmun who sat on this panel as a member of this court before his elevation to the United States Supreme Court did not participate in the consideration or decision of this case
 
 
 [1]
 All references in this opinion to the Internal Revenue Code pertain to the 1939 Act, unless otherwise specified
 
 
 [2]
 TM&E-Delaware succeeded to the assets, subject to the liabilities, of TM&E-Illinois on February 8, 1957. (Except where the separate identities are significant, we will refer only to TM&E, meaning TM&E-Illinois, which was the taxpayer during 1949-1953.)
 
 
 [3]
 Recovery of some $75,000 was made by taxpayer from the original contractor. This amount was deducted from the original capital building cost. This sum was in payment for structural defects in the buildings as well as the parking lots
 
 
 [4]
 This court did recognize, however, that under § 273(k) abatement of the assessment would in effect destroy the taxpayer's liability for any interest computed from the date of the assessment. Transport Mfg. & Equip. Co. v. Trainor, 382 F.2d 793, 797 (8 Cir. 1967)
 
 
 [5]
 Section 297 reads:
 "In the case of the amount collected under section 273(i) there shall be collected at the same time as such amount, and as a part of the tax, interest at the rate of 6 per centum per annum upon such amount from the date of the jeopardy notice and demand to the date of notice and demand under section 273(i), or, in the case of the amount collected in excess of the amount of the jeopardy assessment, interest as provided in section 292. If the amount included in the notice and demand from the collector under section 273(i) is not paid in full within ten days after such notice and demand, then there shall be collected, as part of the tax, interest upon the unpaid amount at the rate of 6 per centum per annum from the date of such notice and demand until it is paid."
 
 
 [6]
 Interest on interest is eliminated under § 6601(f) (2) of the 1954 Internal Revenue Code
 
 
 [7]
 Other cases cited by the Commissioner to support its jurisdictional argument, Fong v. United States, 368 F.2d 325 (9 Cir. 1966); United States v. Glasser, 287 F. 2d 433 (7 Cir. 1961), also involved appeals from the federal district court
 
 
 [8]
 This is precisely what the Commissioner did here
 
 
 [9]
 Section 273(i) reads:
 "When the petition has been filed with the Tax Court and when the amount which should have been assessed has been determined by a decision of the Tax Court which has become final, then any unpaid portion, the collection of which has been stayed by the bond, shall be collected as part of the tax upon notice and demand from the collector, and any remaining portion of the assessment shall be abated. If the amount already collected exceeds the amount determined as the amount which should have been assessed, such excess shall be credited or refunded to the taxpayer as provided in section 322, without the filing of claim therefor. If the amount determined as the amount which should have been assessed is greater than the amount actually assessed, then the difference shall be assessed and shall be collected as part of the tax upon notice and demand from the collector."
 
 
 [10]
 As observed in Louisiana & Arkansas Ry., supra:
 "As to the Board's function in respect of the original taxpayer and the deficiency, before assessment, it is clear that interest is treated separately from the deficiency, is imposed directly by the statute and is collected by the Commissioner as thus prescribed as a supplement to the deficiency after it is finally determined. The entire scheme of sections 273 and 274, Revenue Act of 1926, supports this view, more especially section 274(j). While both the deficiency and the interest are collectible as parts of the tax, they are separate from each other and within the operation of different parts of the machinery of administration." 28 B.T.A. at 155.
 
 
 [11]
 "The final question involves the Commissioner's cross-petition, asserting that the Tax Court erred in failing to provide for interest on the deficiencies. However, interest on deficiencies may not be assessed, nor an action brought for their collection until the deficiencies are assessed. (26 U.S.C. § 292(a) (1952 ed.)). The deficiencies may not be assessed, if a petition is filed with the Tax Court for a redetermination, until the taxpayer's liability for the tax has been finally established. (26 U.S.C. § 272(a) (1) (1952 ed.)). Therefore, matters involving interest must await the outcome of the proceeding for redetermination. It is for this reason that the Tax Court, in determining a taxpayer's liability for the deficiency, does not have jurisdiction to determine his liability for interest." 312 F.2d at 319
 
 
 [12]
 "Any balance found due by the Board carried interest not by virtue of any words in the decision specifying interest, for the Board in its decisions never grants interest, but because of the requirements of the statute. As was said in Standard Portland Cement Company v. Commissioner, 3 Cir., 80 F.2d 585, 587: `The orders of determination and redetermination did not deal with the question of interest. The Board has repeatedly held that it has no jurisdiction over interest. * * * Consequently, if the order of redetermination stands as entered, the Commissioner may assess the interest on the deficiency at the same time that he assesses the deficiency from the date the tax became due until it was paid on April 13, 1933.'" 94 F.2d at 578