POST BROS. CONSTRUCTION CO., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Post Bros. Constr. Co. v. Commissioner
Docket No. 3603-69
United States Tax Court
T.C. Memo 1973-257; 1973 Tax Ct. Memo LEXIS 29; 32 T.C.M. (CCH) 1217; T.C.M. (RIA) 73257; November 26, 1973, Filed Irvin Grant and George J. Popovich, for the petitioner. Alan R. Herson, for the respondent. TANNENWALD
MEMORANDUM OPINION TANNENWALD, Judge: * Respondent determined the following deficiencies in petitioner's income tax: 2 Taxable year ended March 31
Deficiency
1964
$4,289.27
1965
3,878.35
1966 [1]
-0-
*30 The sole question is whether petitioner is entitled to a deduction for "rents" pursuant to section 162(a) (3). [2]
All of the facts have been stipulated and are found accordingly. Petitioner is a corporation with its principal office in Westminster, California, at the time the petition herein was filed. It filed its Federal income tax returns for the years in issue with the district director of internal revenue at Los Angeles, California. Prior to its incorporation on April 1, 1963, petitioner's excavating, grading, and paving activities were carried on in partnership form. The four partners, each with a 25-percent interest in the business, were Charles R. Post (hereinafter "Charles"), Flora C. Post ("Flora"), Raymond C. Post ("Raymond"), and James E. Russell ("James"). Raymond is Charles' son and James is 3 Flora's son-in-law. Flora's deceased husband, Norman Post, who was originally a partner, was Charles' brother. Upon incorporation, the four partners named above each became owners of 25 percent of the capital stock of petitioner. Each *31 continues to own his or her one-fourth interest to the present time. With the exception of three sheepsfoot tampers, all the partnership's assets were transferred to petitioner upon its incorporation. Flora was unwilling to transfer her partnership interest to a corporation unless she could be assured of a continuation of her income from the business; therefore, it was orally agreed that the three tampers would be transferred to Flora as her individual property and petitioner would rent them from Flora for an indefinite period of time for $1,000 per month when in use. At the time of incorporation, Flora also transferred to petitioner four income-producing lots which had been her individual property, having a book value of $22,688.35. One of the lots has been leased by petitioner to Union Oil Company until March 31, 1986 for a minimum rental of $1,100 per month. Petitioner has been receiving an average of $100 override on this lease. The oral rental agreement provided, in addition to the payment of rent, that Flora would be obligated to pay 4 for all major repairs of the tampers but that petitioner would pay all county personal property taxes. On November 1, 1968, Flora *32 paid $5,847.60 for such repairs, which amount she treated as a capital expenditure. Petitioner has paid all required county personal property taxes. The agreement was not put into petitioner's minutes, nor has it ever been reduced to writing. A tamper is attached to the rear of a tractor and is used to compact earth. The use of all three tampers is required in petitioner's construction work. The partnership purchased the tampers in 1957, when they had already been used for two years, at costs of $2,717.00, $3,081.30, and $3,120.00. At the time of petitioner's incorporation, the cost of one new tamper was $6,000. At that time and from 1964 to the date of submission of this case, $1,000 was a reasonable monthly rent for the three tampers. Petitioner has continued to use the same three tampers in its construction business, paying Flora $500 to $1,000 per month as rent. Pursuant to the aforementioned oral agreement, petitioner paid Flora $11,000 during its taxable year ended March 31, 1964, $13,000 during its taxable year ended March 31, 1965, and $9,000 during its taxable year ended March 31, 1966. 5 Respondent has completely disallowed the deductions petitioner claimed *33 for these amounts. Section 162(a) (3) provides for the deduction of "rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property." The question before us is whether the payments by petitioner to Flora satisfy the requirements of this section. Although there is some confusion in the decided cases as to the role of "reasonableness" in the determination of the deductibility of "rental," the critical factor is not whether the payments claimed "were reasonable in amount but whether they were in fact rent instead of something else paid under the guise of rent." See Roland P. Place, 17 T.C. 199, 203 (1952), affirmed per curiam 199 F.2d 373 (C.A. 6, 1952). See also Stanley Imerman, 7 T.C. 1030 (1946); Herbert Davis, 26 T.C. 49, 56 (1956). In this context, reasonableness is an element to be considered, along with the other circumstances involved in the transaction, [3] in order to determine the 6 ultimate issue, namely, whether the payments are required to be made as a condition to the continued use and occupancy of the property. Anderson Dairy, Inc., 39 T.C. 1027, 1043 (1963). *34 That issue is one of fact. See Midland Ford Tractor Company v. Commissioner, 277 F.2d 111, 115 (C.A. 8, 1960), affirming a Memorandum Opinion of this Court. Such being the situation, each case is sui generis, with the result that the numerous cases cited by the parties are of scant help in charting our path to decision herein. That this is a fully stipulated case does not relieve the taxpayer of its burden of proof. Rule 32, Tax Court Rules of Practice.
At the outset, we note that the parties have stipulated that, at all times material herein, $1,000 constituted a reasonable monthly rental. While, as we have previously pointed out, reasonableness is not per se determinative, it is a factor to be considered and, in the context of this case, we think a significant factor. The parties have argued extensively about the existence of a close *35 relationship between petitioner and Flora. Clearly, if such a relationship existed, it would require that the transaction in question be given careful scrutiny. See, e.g., Sparks Nugget, Inc., v. Commissioner, 458 F.2d 631 (C.A. 9, 1972), affirming a 7 Memorandum Opinion of this Court; Potter Electric Signal and Manufacturing Co. v. Commissioner, 286 F.2d 200 (C.A. 8, 1961), affirming a Memorandum Opinion of this Court; Southern Ford Tractor Corporation; 29 T.C. 833 (1958); Stanwick's, Inc., 15 T.C. 556 (1950), affirmed per curiam 190 F.2d 84 (C.A. 4, 1951); Limericks, Inc., 7 T.C. 1129 (1946), affd. 165 F.2d 483 (C.A. 5, 1948). Here, Flora was a 25-percent shareholder and the other 75 percent was owned equally by her son-in-law, brother-in-law, and nephew. While these relationships do not fit the requirements of certain sections of the Code dealing with transactions between or involving related taxpayers, it does not necessarily follow that there were not sufficiently close family ties to demand the careful scrutiny called for by the decided cases in a situation such as that involved *36 herein. We will assume arguendo that such ties did exist, but this assumption does not necessitate the conclusion that the payments made to Flora by petitioner failed to meet the requirements of section 162(a) (3). Respondent argues that it would have been more "reasonable for petitioner to purchase three new tampers in 1963 rather than rent three eight-year old tampers over three years for $33,000." As a matter of hindsight, 8 this may well be the case, but the economics of capital investment by way of purchase of assets versus leasing without such investment are not subject to such a simplistic analysis. The danger of such analysis is underscored by the fact that the lease arrangement herein was for an indefinite term and on a use basis, with the result that petitioner was always in the position, so to speak, "to blow the whistle" on Flora. The major thrust of respondent's argument is that we should judge the rent over the long run and not on a per-month basis. From this, he concludes that, although $1,000 is a reasonable monthly rental when viewed in isolation, the aggregate amount which had been paid to Flora by the end of the taxable years involved herein was so disproportionate *37 that the stipulated reasonable monthly rental should be ignored. In so arguing, respondnet relies heavily on Brown Printing Co. v. Commissioner, 255 F.2d 436 (C.A. 5, 1958), reversing a Memorandum Opinion of this Court. But that case involved a specified term and a percentage rental, whereas the instant situation, as we have already pointed out, involved a "blow-the-whistle" arrangement between petitioner and Flora. On this basis and taking into account other distinguishing factors, we 9 think that Brown Printing Co. is inapposite herein. [4] We recognize that the parties have stipulated that Flora continued to receive $500 to $1,000 per month up to the time of submission of the case. But this fact, standing alone, is not, in our opinion, enough to support a decision in favor of respondent, particularly when one considers that, at least through petitioner's first fiscal year ending March 31, 1964, and well into its second fiscal year ending March 31, 1965 (both of which years are in issue), the amounts paid to Flora did not exceed what it would have cost petitioner to purchase new tampers. It may well be that at some point during a taxable year subsequent to those *38 involved herein, the accumulated payments to Flora totalled such a large amount that the aggregate approach of Brown Printing might properly be applied and the payments to Flora from that point on might be held not to satisfy the requirements of section 162(a) (3). Such a rationale would be analogous to that found in the so-called debt-equity area, where the characterization of advances by a shareholder to his corporation at inception is not determinative of the characterization in subsequent years. Compare 10 Toledo Blade Co., 11 T.C. 1079, 1085 (1948), affirmed per curiam on another issue 180 F.2d 357 (C.A. 6, 1950), with Cuyuna Realty Company v. United Stated, 382 F.2d 298, 301-302 (Ct. Cl. 1967), and Tampa & Gulf Coast Railroad Co., 56 T.C. 1393, 1402 (1971). See and compare Fin Hay Realty Co. v. United States, 398 F.2d 694, 698-699 (C.A. 3, 1968). The treatment of payments to Flora for any such subsequent year is not before us, however, and we express no opinion as to what our conclusion would be in respect thereto, especially if we were to have the benefit of a more complete record. *39 In sum, we conclude that under all the facts and circumstances herein, the arrangement between Flora and petitioner constituted a bona fide lease during those years, with the result that the amounts in question were paid "as a condition to the continued use or possession" of the tampers. The foregoing analysis also disposes of respondent's argument that, since the other shareholders of petitioner were officers, compensated for their services, while Flora was not, the payments to Flora were disguised equalizing payments in the nature of compensation. In passing, we note that the record herein contains no evidence as to the amounts of compensation paid to officer-shareholders beyond 11 the bare amounts set forth in petitioner's tax returns.In any event, our conclusion that the payments to Flora during the taxable years in question were for the use of the tampers disposes of the matter and directly negates any possibility of finding that the payments were compensation in disguise, a finding which would at best be speculative given the state of the record before us. Decision will be entered under Rule 50. Footnotes
*. Pursuant to a notice of reassignment sent to counsel for the parties, and to which no objections were filed, this case was reassigned by the Chief Judge on August 9, 1973 from Judge Austin Hoyt to Judge Theodore Tannenwald, Jr.↩
1. No deficiency was determined by respondent for the taxable year ended March 31, 1966 because petitioner's income tax return for that year reflected a loss in an amount greater than the amount disallowed. The disallowances, however, reduced petitioner's loss for carryback and carryover purposes and are consequently still in issue. ↩
2. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue. ↩
3. The intertwining of reasonableness as a factor and the ultimate determination demanded by the statute undoubtedly accounts for the confusion which appears in the language used in many opinions. See cases collected in Sparks Nugget, Inc., T.C. Memo. 1970-74, affd. 458 F.2d 631↩ (C.A. 9, 1972). 4. The same can be said of Midland Ford Tractor Company v. Commissioner, 277 F.2d 111, 115↩ (C.A. 8, 1960), affirming a Memorandum Opinion of this Court.